# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNNE HUXTABLE, et al.,<br><br>Plaintiffs,<br>v.<br>TIMOTHY F. GEITHNER, as United States Secretary of the Treasury, et al.,<br><br>Defendants. | Case No. 09cv1846 BTM (WVG)<br><br>**ORDER RE MOTION TO DISMISS OR FOR SUMMARY JUDGMENT** |

Defendant Timothy F. Geithner, as United States Secretary of the Treasury ("Defendant"), has filed a motion to dismiss or, in the alternative, for summary judgment [Doc. 55]. Plaintiffs have not filed an opposition.[1] For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

**1.     Plaintiffs' Home Mortgage**

Plaintiffs' Complaint arises out of non-judicial foreclosure proceedings related to their home in Ramona, California. Plaintiffs defaulted on their home mortgage in November 2007. (Compl. ¶ 26.) In February 2008, a notice of default was recorded and served. (Compl. ¶ 27.) And in December 2008, a notice of sale was recorded and served, setting a date for the public auction of Plaintiffs' home. (Compl. ¶ 29.) Pursuant to a joint motion, the Court has

---

[1] After the first deadline for filing their opposition, Plaintiffs asked for an extension, which the Court granted. Plaintiffs again missed the deadline for filing an opposition, and as of the date of this order Plaintiffs have not opposed the motion.

enjoined the sale of Plaintiffs' home during the pendency of this action. (September 29, 2009 Order, Doc. 25.)

Plaintiffs allege that they are eligible for a loan modification under the Home Affordable Modification Program ("HAMP"). (Compl. ¶ 95.) HAMP is a federal program that allows eligible mortgagors to refinance their mortgages and reduce their monthly payments. (Compl. ¶ 66.) Despite their alleged eligibility for HAMP, the loan servicer, Defendant National City Mortgage Company,[2] twice denied their application for a loan modification. (Compl. ¶¶ 90, 93.) Plaintiffs say they did not receive a reason for the denial or an opportunity to appeal. (Compl. ¶ 100.)

**2.    The HAMP Program**

In February 2009, President Obama and Defendant Geithner, as Secretary of the Treasury, announced the Making Home Affordable Program. (Geithner's Statement of Material Facts ("SMF") ¶ 1.) As a component of that program, HAMP gives incentives to servicers, investors, and homeowners to enter into sustainable home-mortgage modifications. HAMP is a complex, national program, and the Treasury Department does not administer it on its own. *Id.* To help administer the program, the Treasury Department entered into a Financial Agency Agreement with the Federal National Mortgage Association ("Fannie Mae"), which made Fannie Mae its "financial agent" for implementing HAMP. *Id.* ¶ 3. Fannie Mae in turn entered into Servicer Participation Agreements with mortgage-loan servicers, which required the servicers to comply with HAMP guidelines. *Id.* ¶ 3.

But the servicers' participation in HAMP is not without exceptions. If there are future material changes to the HAMP program or guidelines, servicers have the unilateral right to opt out of HAMP. (Compl., Ex. A, ¶ 10C.) And although servicers have to make reasonable efforts to get investors' consent to loan modifications, servicers are not required to modify loans if the pooling and servicing contracts prohibit them from doing so. (Compl., Ex. A, ¶

---

[2] According to the Complaint, National City is now owned by PNC Financial Services Group, Inc. PNC is also a Defendant in this action.

2B.) Further, even if a servicer has not opted out of the program and its servicing agreements allow it to modify a particular loan, the servicer only has to modify the loan if the borrower qualifies for a modification.

The Treasury Department has issued guidelines for deciding whether a borrower should qualify for a loan modification. In order to qualify under the Treasury guidelines, a servicer must determine whether the net present value ("NPV") of the cash flows from the modified loan would be greater than the unmodified loan; only if the NPV of the modified loan is greater must the servicer modify loan. (Maggiano Decl. ¶¶ 5, 9.) Although the Treasury Department has issued its own model for calculating NPV, servicers with at least a $40 billion servicing book "may choose to build and implement proprietary NPV models for use in the HAMP or to implement the base model on their own systems." ( Lodgment, Ex. L, at 31.) Some servicers therefore have flexibility in creating the model which decides who is eligible for a modification and who is not.

For those borrowers whose modifications have been denied or who have questions about loan modifications, HAMP Supplemental Directive 09-01 requires servicers to "have procedures and systems in place to be able to respond to inquiries and complaints about the HAMP [and] should ensure that such inquiries and complaints are provided fair consideration, and timely and appropriate responses and solutions." (Lodgment, Ex. F, 13.) SD 09-01 also requires servicers to notify denied borrowers of their ineligibility and explore other foreclosure-prevention options before foreclosing. *Id.* at 18. Treasury has a system for monitoring and ensuring compliance with HAMP by auditing denied applications and, if they were denied incorrectly, telling the servicer that it must meet HAMP's requirements. (Maggiano Decl. ¶¶ 34–35.) Treasury has also created a website to give information to borrowers seeking a loan modification. In addition, it administers a toll-free HOPE hotline which allows borrowers to get more information about HAMP and to raise concerns about a denied loan-modification application. *Id.* at ¶¶ 30, 40.

**3.   Plaintiffs' Suit**

Plaintiffs' Complaint contains two counts. Both are for violation of due process under the Fifth Amendment for failing to create rules implementing HAMP that comport with due process. (Compl. ¶¶ 114–27.) In September 2009 the National City and PNC Defendants moved to dismiss the Complaint because they are private actors and Plaintiffs' constitutional claims cannot be asserted against them. The Court disagreed and denied the motion, finding that, depending on the facts, those Defendants could be state actors. The magistrate judge then held conferences with the parties and ordered Plaintiffs to submit loan-modification paperwork to PNC, which had agreed to consider Plaintiffs' loan-modification application. It is unclear from the record whether Plaintiffs complied or, if they did, why PNC denied their application. In any case, on May 14, 2010 the magistrate judge issued an order noting that the parties had been unable to settle and ordering them to lodge a discovery plan with the Court, which they are now presumably following.

Defendant Timothy F. Geithner, as United States Secretary of the Treasury, has now filed a motion to dismiss or, in the alternative, for summary judgment.

## II. DISCUSSION

**1.   Standing**

Defendant first argues that Plaintiffs lack standing to assert their constitutional claims against him in his capacity as Secretary of the Treasury. In order to have standing, a plaintiff (1) must have suffered an injury (2) which is fairly traceable to the defendant's actions and (3) is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, – U.S. –, 130 S. Ct. 2743 (2010). The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997). On a motion to dismiss for lack of standing, the Court may review evidence outside the pleadings without converting the motion into a motion for summary judgment. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

The question here is whether Defendant's alleged actions caused injury to Plaintiffs. Their alleged injury is their failure to get a HAMP loan modification. But who is responsible for that? Defendant argues Plaintiffs' injury stems from some combination of (1) National City's two pre-litigation refusals to offer Plaintiffs a HAMP loan modification, (2) Plaintiffs' apparent failure to submit a loan-modification application to PNC according to the magistrate judge's order, or (3) PNC's denial of Plaintiff's application, assuming Plaintiffs submitted it to PNC.

Plaintiffs, however, allege Defendant Geithner caused them to not get a HAMP loan modification. According to Plaintiffs, Defendant's failure to implement procedural safeguards, like an appeal of an adverse decision on a loan-modification application, is what caused their injury. The Court finds that the determination of the standing issue—whether Defendant caused Plaintiffs' injury—is entangled with the Court's determination on the merits. For example, in order to decide the standing question the Court would have to examine the procedures in place for determining eligibility for HAMP loan modifications and appealing those determinations. The Court would then have to decide whether those procedures or lack thereof actually caused the ultimate denial of Plaintiffs' modification application. The Court finds that these issues are more appropriately addressed below on Defendants' motion for summary judgment.

The Court also rejects Defendant's argument that Plaintiffs caused their own injury by failing to present loan-modification paperwork to PNC pursuant to the magistrate judge's order or failed to use the HOPE hotline.[3] There is no evidence before the Court that Plaintiffs either failed to submit the loan-modification paperwork or that Plaintiffs failed to call the HOPE hotline. Defendant also fails to cite any support for its assertion that Plaintiffs would have to call the HOPE hotline before asserting this claim. Based on Defendant's own evidence, the HOPE hotline is more of an informational hotline and not a formal avenue for

---

[3] According to Defendant Geithner, the HOPE hotline "provides an avenue for borrowers to raise concerns, receive additional information regarding a non-approval determination, and when necessary, escalate complaints about the HAMP modification process to trained staff who can intercede with servicers on their behalf." (Memo. at 10.)

appeal.

## 2. Motion for Summary Judgment

### A. <u>Legal Standard</u>

Because the Court must consider evidence outside of the pleadings in deciding whether Plaintiffs have a protected property interest in a HAMP modification, the Court resolves the question under the summary-judgment standard. *See* Fed. R. Civ. P. 12(d) (if court considers matters outside of the pleadings, it considers the motion under Rule 56). Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion,

the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B. <u>There Is No Genuine Issue Regarding Whether a HAMP Modification Is a Protected Property Interest</u>

Plaintiffs have not opposed Defendant's motion for summary judgment and have therefore submitted no argument or evidence contradicting anything submitted by Defendant.

Plaintiffs believe that HAMP as administered unlawfully deprives them of a protected property interest in violation of the Fifth Amendment. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire . . . [or] unilateral expectation," but must instead "have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Where the decision to confer a benefit is unconstrained by 'particularized standards or criteria,' no entitlement exists." *Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1436 (9th Cir. 1986). The Court must therefore determine whether Plaintiffs have a legitimate claim of entitlement to a HAMP loan modification, which goes beyond an "abstract need or desire." *Id.*

Another district court has considered exactly this issue and decided that HAMP does not create a protected property interest in receiving a loan modification. The Court finds the reasoning in that case persuasive and adopts it here.

In *Williams v. Geithner*, No. 09cv1959, 2009 WL 3757380 (D. Minn. Nov. 9, 2009), the court held HAMP did not create a protected property interest for several reasons. First, the court addressed 12 U.S.C. § 5219(c), which states, "the Secretary shall consent, *where appropriate*, and considering net present value to the taxpayer, to reasonable requests for loss mitigation measures" (emphasis added). In holding that "the statute does not create an absolute duty on the part of the Secretary to consent to loan modifications," *Williams* 2009 WL 3757380 at *6, the court focused on the phrase "where appropriate." The phrase gives the Secretary discretion in whether to modify a loan, and suggests that Congress did not

intend to create an entitlement. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Not only is Secretary Geithner not obligated to agree to loan modifications, but neither are servicers participating in the HAMP program. Servicers can opt out of the program if the HAMP guidelines are changed. Moreover, servicers have discretion to modify certain key variables in the NPV model, giving servicers the right to determine, at least to some extent, who is eligible and who is not. Lastly, the availability of the loan modification depends on whether a servicer's servicing agreements allow modifications. All of these facts together show that Congress did not intend to create an entitlement or protected property interest in HAMP modifications. Servicers can opt out of the program, they have discretion in determining who is eligible, and a servicers' contracts with other private parties can preclude the availability of a modification completely.

For these reasons, "HAMP does not provide Plaintiffs with a 'protected property interest,' the denial of which must comport with due process." *Williams*, 2009 WL 3757380, at *7. Because this issue is central to all of Plaintiffs' claims against every Defendant, the Court enters summary judgment in favor of Defendant Geithner and all other Defendants.

Because Plaintiffs do not have a protected property interest, there is no need to address Defendant's remaining arguments.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Geithner's motion to dismiss or, in the alternative, for summary judgment [Doc. 55]. The legal conclusions in this order apply equally to Plaintiffs' claims against the remaining Defendants, which are also based on the existence of a constitutionally protected property interest. In the absence of

//
//
//

such an interest, all of Plaintiffs' claims fail.  The Court therefore enters summary judgment in favor of all Defendants.  The Clerk shall enter judgment accordingly.

The previously entered stay and injunction on any foreclosure sale is **VACATED.**

**IT IS SO ORDERED.**

DATED:  September 2, 2010

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge